IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| SHARLENE BRINKLEY | PLAINTIFF |
| V. | CAUSE NO. 3:18-cv-342-CWR-FKB |
| LOGAN'S ROADHOUSE RESTAURANT | DEFENDANT |

**ORDER**

Before the Court is Logan's Roadhouse Restaurant's motion to dismiss.

**I.     Factual and Procedural History**

This is a case about sexual harassment, retaliation, and sex discrimination. The harassment became so pervasive that it created a hostile work environment. According to Sharlene Brinkley, in August 2015, she began working at Logan's Roadhouse in Ridgeland as a server. Shortly after starting, a manager named Johnquay Aldridge began making sexual comments and advances towards Brinkley. Brinkley reported this to the general manager, Felix Cheatham, and Cheatham said he would take care of the matter. However, Cheatham was moved to a different location, Aldridge and Brinkley remained in Ridgeland, and the harassment continued.

When Cheatham was moved, David Hohenadel and Jason Spires joined Aldridge as managers at Logan's. Within one week of Hohenadel starting, Brinkley alleges that he began sexually harassing her. The harassment took place almost every day. Brinkley reported Hohenadel's actions to another female manager, but the harassment continued. After Brinkley reported this harassment to the female manager, Spires also began harassing her. Brinkley alleges that when she resisted the harassment, she was left off the schedule on the busiest days at the restaurant, which caused her to not make as much money.

On one occasion around November 2016, Spires told Brinkley that she could not leave the restaurant until she showed him her breasts; if she left without showing him, he would say that she quit her job. She complied and pulled up her shirt.

In January 2017, Brinkley scheduled leave to take her children to the doctor. The day before her scheduled leave, Hohenadel told her she had to work the following day. Brinkley reminded him that she was scheduled to be off. Hohenadel told Brinkley to "bring her sweet ass to work anyway because [he] need[ed] something to look at." Docket No. 8 at ¶ 27. Brinkley took the day off, as planned, but when she returned to work as scheduled, Spires fired her. Brinkley reported her termination to authorities at Logan's Roadhouse outside of the Ridgeland location. She was rehired but transferred to another location and demoted back to her original position as a server, even though when she was fired she was working in a higher position as a team leader.

In March 2017, Brinkley filed a charge of discrimination against Logan's with the EEOC. The full text of the charge is below:

> I was hired by the above employer in August 2015 as a server and progressed to team lead. In November and December 2016 I was subjected to sexual comments and advances from the store manager.[1] After I threatened to report him to corporate, the advances stopped. I was scheduled to work January 25th but off January 26 and January 27. On January 25, the store manager asked me to work on the 26th. I told him I had a prior engagement and could not work. He said I had better come in. I took off on January 26 and 27. When I reported to work on January 28, I was discharged.
> The manager said I was discharged for not working January 26 and not calling off the 27th.
> I believe I was subjected to sexual harassment because of my sex (female) and discharged in retaliation for rebuffing the sexual advances in violation of Title VII of the Civil Rights Act of 1964, as amended. No one has ever been discharged for not working their off days. But for not going along with the advances would I have been discharged.
> After the discharge I called corporate and was offered by job back but as a server. The position that I began in August 2015.

---

[1] In response to the motion to dismiss, Brinkley clarifies that this reference is to Aldridge.

Docket No. 10-1. On the charge, Brinkley marked that she had been discriminated against based on her sex and subjected to retaliation between November 1, 2016 and January 28, 2017.

In May 2018, Brinkley filed this complaint. In July, defendant moved to dismiss the action. Brinkley then amended her complaint in due course under Federal Rule of Civil Procedure 15(a) and again, defendant moved to dismiss.[2] Brinkley alleges that the restaurant is liable under Title VII for sexual harassment, a hostile work environment, sexual discrimination, and retaliation.

## II. Legal Standard

Rule 12(b)(6) authorizes dismissal of actions that fail to state a claim upon which relief may be granted. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

When considering a motion to dismiss, the Court accepts the plaintiff's factual allegations as true and makes reasonable inferences in the plaintiff's favor. *Id.* "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.,* 394 F.3d 285, 288 (5th Cir. 2004) (citation omitted).

## III. Discussion

Defendant argues that almost all of the allegations against Aldridge, Spires, and Hohenadel should be disregarded because they were not properly exhausted in front of the EEOC. When those

---

[2] Before the Court could rule on the first motion to dismiss, plaintiff amended her complaint pursuant to Federal Rule of Civil Procedure 15(a). Therefore, the first motion to dismiss is moot and the Court will address only the second.

allegations are removed from the complaint, there are not enough factual allegations left to state a claim for harassment, a hostile work environment, retaliation, or discrimination. Defendant adds that the John Doe defendants must be dismissed from the suit as a matter of law. Each argument will be addressed in turn.

### A. Sexual Harassment/Hostile Work Environment

A plaintiff proves a sexual harassment claim by showing that the conduct of the employer was "severe or pervasive enough to create an objectively hostile or abusive work environment— an environment that a reasonable person would find hostile or abusive." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). "In order to establish a hostile working environment, a plaintiff must prove five elements: (1) the employee belonged to a protected class; (2) the employee was subject to unwelcome harassment; (3) the harassment was based on membership in a protected class; (4) the harassment affected a 'term, condition, or privilege' of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action." *Carr v. Sanderson Farms, Inc.*, 665 F. App'x 335, 339 (5th Cir. 2016).

Defendant argues that this claim may not proceed because the allegations supporting it were not exhausted before the EEOC. In particular, defendant argues that the allegations against Spires and Hohenadel do not appear in the charge and the charge limits the timeframe of Aldridge's harassment to the end of 2016.

Defendant is correct that a court does not have subject matter jurisdiction over a Title VII claim unless it is appropriately exhausted. *See McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008). A plaintiff's complaint must have Title VII claims that can be expected to grow out of the charge that was filed with the EEOC. *See Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012). In determining whether allegations in a complaint were properly exhausted before the

EEOC, "[w]e use a fact-intensive analysis of the administrative charge that looks beyond the four corners of the document to its substance" to construe the charge broadly. *McClain,* 519 F.3d at 273 (quotation marks and citation omitted).

A comprehensive approach is taken regarding exhaustion of hostile work environment claims. These claims are "continuing because they involve repeated conduct, so the unlawful employment practice cannot be said to occur on any particular day." *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 737 (5th Cir.), *as revised* (Mar. 13, 2017) (quotation marks and citation omitted). As such, if "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* This is often referred to as the continuing violation doctrine. *Filer*, 690 F.3d at 647.

There are three limitations on the doctrine: (1) "the plaintiff must demonstrate that the 'separate acts' are related, or else there is no single violation that encompasses the earlier acts"; (2) "the violation must be continuing; intervening action by the employer, among other things, will sever the acts that preceded it from those subsequent to it, precluding liability for preceding acts outside the filing window"; and (3) "the continuing violation doctrine is tempered by the court's equitable powers, which must be exercised to honor Title VII's remedial purpose without negating the particular purpose of the filing requirement." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) (quotation marks and citations omitted).

In this case, Brinkley's charge references the sexual comments and advances from Aldridge in the fall of 2016. The charge then mentions Brinkley's attempt to take scheduled leave and her ultimate termination in January 2017. The complaint contains new information on the harassment

Brinkley experienced from Hohenadel and Spires in between Aldridge's advances in the fall of 2016 and her termination in January 2017.

The new details in the complaint include allegations that Hohenadel and Spires both sexually harassed Brinkley by commenting on her appearance, her sexual preferences, and the sexual acts they wanted to do to her. The complaint also adds more detail regarding Aldridge's actions. Some of these allegations include degrading and demeaning comments such as "I heard you like it rough", "I have a trick I do with my finger and my wife loves it", and "[I] am going to f*** every server." *See* Docket No. 8 at ¶¶ 9, 14, 17. While retrieving an item from a shelf, Hohenadel told Brinkley that she was in a prime position for him to "shove [his] face in [her] ass." *Id*. at ¶ 15. In the most brazen allegation, Spires forced Brinkley to show him her breasts or he threatened to tell the rest of the management that she quit her job. *Id*. at ¶ 22.

When taken all together, Brinkley's story can be briefly abridged as follows: she was harassed by Aldridge; reported it to a manager; then a manager who should have addressed the problem, Hohenadel, joined in the harassment. Next, she was harassed by Hohenadel; reported it to a manager; then a manager who should have addressed the problem, this time Spires, joined in the harassment. Brinkley's complaint describes harassment from Hohenadel and Spires that did not begin until she reported the inappropriate conduct by Aldridge. Therefore, the acts are related and there was no intervening action by Logan's to separate the incidents.

The Court acknowledges that it would have been ideal for Brinkley to include these specific factual allegations in the charge with the EEOC. However, "the provisions of Title VII were not designed for the sophisticated, and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally." *Pacheco v. Mineta*, 448 F.3d 783, 788–89 (5th Cir. 2006) (quotation marks and citations omitted). The Fifth Circuit has stated that courts

"must ever be mindful that the provisions of Title VII were not designed for the sophisticated or the cognoscenti, but to protect equality of opportunity among all employees and prospective employees. This protection must be extended to even the most unlettered and unsophisticated." *Arich v. Dolan Co.*, No. 3:11-CV-538-CWR-LRA, 2012 WL 2025202, at *4 (S.D. Miss. June 5, 2012) (citations omitted).[3] Thus, allowing the factual allegations to remain in the complaint honors the purpose of Title VII.

Defendant points to *Filer v. Donley* to support its position that the charge does not support the facts Brinkley is now alleging. In *Filer*, a member of the Air Force filed a charge with the EEOC and included details about the display of a noose by his supervisor. 690 F.3d at 645. Later, the Air Force member filed suit alleging a hostile work environment and included additional factual allegations. The court found the new allegations in the complaint had not been properly exhausted because some of the new facts only became known to the plaintiff during the EEOC proceedings, the plaintiff was alleging facts that did not actually happen to him, and the supervisor who was referenced in the EEOC charge was not involved in any of the additional facts pled in the complaint. *Id.* at 648. With those allegations disregarded, the court concluded that the lone factual support for Filer's hostile work environment claim was the display of the noose. *Id.*[4]

---

[3] "It is more important that pleading rules be relaxed in the decidedly informal atmosphere of Title VII. Since the Act involves a layinitiated proceeding, it would be out of keeping with the Act to import common-law pleading niceties to (the charge of discrimination) or in turn to hog-tie the subsequent lawsuit to any such concepts. This Act was designed to protect a worker from becoming an industrial pariah, and his lack of literary acumen should not stymie his quest for equal employment opportunity." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970) (quotation marks and citation omitted).

[4] The district court in *Filer* granted summary judgment in favor of the defendant, concluding that the display of the noose was not enough to support a hostile work environment claim. *See Filer v. Donley*, No. 4:10–CV–310–A, 2011 WL 196169, at *7 (N.D. Tex. January 20, 2011). The Fifth Circuit reversed the case on other grounds before addressing this point. The district court case serves as a reminder that this Circuit's jurisprudence involving nooses in the workplace can be troubling. *See Leslie v. Noble Drilling (U.S.) L.L.C.,* No. CV H-16-0610, 2017 WL 1051131, at *6 (S.D. Tex. Mar. 17, 2017) (holding that plaintiff failed to prove a hostile work environment claim based on incident of a coworker "approach[ing] him with a rope tied into a hangman's noose and . . . . allegedly [telling] him to put the noose around his neck and jump off the ship"); *Brooks v. Firestone Polymers, LLC*, 70 F. Supp. 3d 816, 860–61 (E.D.

In contrast, here each of the claims was spurred by the former. The factual allegations build upon each other and are related. Further, these are all allegations of actions that happened directly to Brinkley.

As other courts have found when concluding that the more detailed facts in a complaint relate back to the EEOC charge, the "incidents involve[d] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120 (2002). For that reason, the Court finds the factual allegations in the complaint relate to what was alleged in the EEOC charge, and there are enough factual allegations to state a claim for relief that is plausible on its face. At this stage, the Court will not dismiss the harassment claim that is based on a hostile work environment.

### B.     Retaliation

Brinkley's charge with the EEOC states she was fired "for rebuffing [her manager's] sexual advances in violation of Title VII of the Civil Rights Act of 1964, as amended." Docket No. 10-1. She goes on to add that "[n]o one has ever been discharged for not working their off days. But for not going along with the advances [is why] I [was] discharged." *Id*.

To state a retaliation claim under Title VII, the plaintiff must sufficiently allege that "(1) [she] engaged in an activity that is protected by Title VII; (2) the employer took an adverse employment action against [her]; and (3) there is a causal connection between the protected activity and the adverse employment action." *Jones v. FJC Sec. Servs., Inc.,* 40 F. Supp. 3d 840, 853 (S.D. Tex. 2014) (citations omitted). Brinkley alleges that she rebuked her managers' sexual advances

---

Tex. 2014), *aff'd* 640 Fed. Appx. 393, 400 (5th Cir. March 2, 2016) (plaintiff finding a miniature hangman's noose inside his hard hat at work was not sufficient to prove a hostile work environment claim).

and harassment and because of that, she was fired. The complaint provides further details on the extent and severity of those advances. She has adequately pled a retaliation claim.

### C. Discrimination

Brinkley's complaint states she is bringing a claim for sexual discrimination. To establish a prima facie case of sex discrimination under Title VII, the plaintiff must show: (1) she belongs to a protected class; (2) she was qualified for his position; (3) she suffered an adverse employment action; and (4) she was replaced by someone outside the protected class, or that other similarly situated persons were treated more favorably. *See Alvarado v. Tex. Rangers,* 492 F.3d 605, 611 (5th Cir. 2007).

It is without dispute that Brinkley has satisfied the first three elements of a discrimination claim because she is a woman, was qualified to work at Logan's, and was terminated. In her charge, Brinkley states that "[n]o one has ever been discharged for not working their off days. But for not going along with the advances would I have been discharged." Docket No. 10-1. This statement addresses the fourth prong of a discrimination claim. "No one" includes other similarly situated people, and they were treated more favorably by not being fired. Thus, Brinkley has stated a discrimination claim that is plausible on its face.

### D. John Doe Defendants

Finally, defendant argues that John Does 1-10 should be dismissed as defendants because Title VII claims may not be asserted against individuals. Defendant is correct. "[T]itle VII does not provide for liability against individual employees who do not otherwise qualify as employers." *Grant v. Lone Star Co.*, 21 F.3d 649, 650 (5th Cir. 1994). John Does 1-10 are hereby dismissed from this action.

## IV. Conclusion

As in all cases, this Court encourages parties to work together to resolve their dispute. Considering the factual allegations of a work culture with rampant harassment, a resolution of the claims between the parties seems prudent.

Defendant's motion to dismiss is granted in part and denied in part.

**SO ORDERED**, this the 13th day of March, 2019.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE